1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHNNY L. FRANKLIN, JR.,

11          Plaintiff,                    No. CIV S-03-0925 DFL DAD P

12      vs.

13   CAMILLE WILLIAMS, et al.,            <u>ORDER AND</u>

14          Defendants.                   <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is defendants Noriega and Toppenberg's motion for

18   summary judgment and plaintiff's motion to obtain the attendance of witnesses at trial.

19                         PLAINTIFF'S COMPLAINT

20          Plaintiff alleges that over a period of three years, he received inadequate and

21   delayed medical care for dermatological conditions including an infected cyst.  Specifically,

22   plaintiff alleges the following.  On September 24, 1997, plaintiff was examined by defendant Dr.

23   Noriega who told plaintiff that the cyst was reinfected and he would be scheduled for surgery.

24   (Compl. at 3.)  In early October of 1997, plaintiff was seen by defendant Dr. Toppenberg who

25   noted that the cyst was "oozing fluid," but that he could not treat plaintiff because he was

26   defendant Noriega's patient.  (<u>Id.</u>)  Defendant Noriega cancelled a December 1997 scheduled

1

1    surgery for plaintiff, after he examined plaintiff and determined that the cyst was draining but

2    had healed.  (Id.)  Defendant Noriega prescribed a mild anesthesia for pain from the cyst.  (Id.)

3    From January of 1998 through August of 1998, plaintiff continued to complain about the infected

4    cyst and was told by defendants that the pain was the result of skin irritation and that he should

5    continue to take anti-inflammatory medication for the pain.  (Id.)   On August 7, 1998, plaintiff

6    was seen by defendant Toppenberg and was told that the cyst was oozing pus and that it appeared

7    that the cyst had been infected for some time.  (Id.)  From September 1998 through June 1999,

8    plaintiff continued to complain about pain from the infected cyst.  (Id. at 4.)  Plaintiff was

9    examined by Dr. Berger on June 11, 1999, and was told that the cyst was still infected and should

10   have been surgically removed long ago.  (Id.)  From July 1999 through February 2000, plaintiff

11   continued to complain about the pain from the cyst.  (Id.)  On March 2, 2000, plaintiff was

12   transferred to the California Medical Facility for surgery to remove the cyst.  (Id.)  Upon arrival,

13   plaintiff was examined by Dr. Athanassious who noted that the cyst was infected but nonetheless

14   cancelled the surgery because plaintiff was scheduled for parole in May of 2000 and could obtain

15   the needed treatment when released.  (Id.)  Plaintiff claims violation of the Eighth Amendment

16   and seeks $250,000 compensatory damages and $800,000 punitive damages from each

17   defendant, as well as, a monetary award for future medical expenses, attorney fees and costs.  (Id.

18   at 4-5.)

19              SUMMARY JUDGMENT STANDARDS UNDER RULE 56

20              Summary judgment is appropriate when it is demonstrated that there exists "no

21   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

22   matter of law."  Fed. R. Civ. P. 56(c).

23              Under summary judgment practice, the moving party

24         always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
25         pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
26         demonstrate the absence of a genuine issue of material fact.

1   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

2   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

4   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

5   after adequate time for discovery and upon motion, against a party who fails to make a showing

6   sufficient to establish the existence of an element essential to that party's case, and on which that

7   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

8   concerning an essential element of the nonmoving party's case necessarily renders all other facts

9   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10  whatever is before the district court demonstrates that the standard for entry of summary

11  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

12          If the moving party meets its initial responsibility, the burden then shifts to the

13  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15  establish the existence of this factual dispute, the opposing party may not rely upon the

16  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17  form of affidavits, and/or admissible discovery material, in support of its contention that the

18  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

23  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

24  1436 (9th Cir. 1987).

25          In the endeavor to establish the existence of a factual dispute, the opposing party

26  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

       In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

       On October 2, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## MOTION FOR SUMMARY JUDGMENT

       Defendants argue that they are entitled to summary judgment in their favor because the evidence established that plaintiff's pilonidal cyst[1] condition did not constitute a

---

[1] Defendants explain that a pilonidal cyst is a cyst containing an in-grown hair.

1    serious medical condition and defendants Noriega and Toppenberg were not deliberately

2    indifferent towards plaintiff's medical needs. (Mot. for Summ. J. (MSJ) at 1, 14.)  Defendants

3    contend that they prescribed plaintiff medications for his skin conditions, but at times when

4    appropriate no treatment or surgery was provided to plaintiff because his pilonidal cysts, fistulas

5    or abscesses had dried up or were no longer infected. (Id. at 14.)  Defendants also contend that

6    they were not the only physicians treating plaintiff and note that plaintiff was also examined and

7    treated by specialists and other physicians. (Id. at 13-14.)  Defendants provide medical records

8    and a chronology of plaintiff's numerous medical examinations and the medical treatment

9    provided to him.

10            In his opposition to the motion for summary judgment plaintiff addresses what he

11   alleges are the discrepancies between the diagnosis made of his condition and the actual medical

12   treatment, or lack thereof, provided.   In this regard, plaintiff contends that he was mis-diagnosed

13   by Dr. Yazdgerdi on August 6, 1997 as suffering from an abscess when in fact he had a

14   "pilonidal sinus" characterized by a chronic draining wound and the appropriate treatment for

15   which was excision. (Opp'n at 3-4.)   Based on information from a medical technical assistant

16   (MTA) that a "pocket" where the excision was done was still infected, plaintiff believes that

17   doctors did not conduct a thorough examination and have mis-diagnosed plaintiff, an African

18   American male, as suffering from a pilonidal disease which usually occurs with Caucasian men.

19   (Opp'n at 6.)  Plaintiff argues that on August 12, 1997, Dr. Yazdgerdi should have reviewed

20   plaintiff's medical file and that his conclusion that a pilonidal cyst was causing plaintiff's skin to

21   break out was incorrect. (Id. at 7.)  Plaintiff does not, however, dispute that he was prescribed

22   medication and ducated for follow-up at that time. (Id.)   Plaintiff contends that surgery should

23   have been performed on September 29, 1997 because he had an infected pocket on his bottom

24   which was not removed during a 1996 surgery which was still present and causing plaintiff pain.

25   (Id. at 8.)  Plaintiff argues that he should have received scheduled surgery on December 15, 1997

26   because, contrary to Dr. Noriega's treatment notes, the cyst that was to be operated upon had not

5

healed but rather was still swollen and causing him daily pain.  (Id. at 10.)   Plaintiff argues that

defendant Dr. Noriega cancelled the surgery, not because the lesion had healed, but because of a

poor standard of care.  (Id. at 12.)   Plaintiff argues that rather than his skin showing "early signs

of infection" as indicated by Dr. Toppenberg on February 10, 1998, in fact infection in the area

was present from 1997 throughout 2000.  (Id. at 11.)   Plaintiff contends that on February 15,

1998 when he sought treatment for a boil that had burst, defendant Toppenberg did not question

him about whether the problem was a boil or pilonidal cyst.  (Id. at 12.)   Plaintiff argues that

although he was seen in the surgery clinic again on September 22, 1998, the progress notes do

not indicate why surgery was not performed that day.  (Id. at 13.)[2]   Plaintiff also contends that

although there was no drainage from the pilonidal cyst on September 22, 1998, that does not

mean that there was infection.  (Id.)  Plaintiff contends that when seen on December 27, 1998 in

the clinic he told defendant Noriega that the area around a cyst that was being re-examined was

still tender and a mass was present.  (Id. at 14.)   Plaintiff argues that on April 23, 1999, Dr.

Berger made a strong referral concerning the treatment of plaintiff's pilonidal cyst which was

ignored.  (Id. at 15.)   Plaintiff also disputes whether Dr. Berger ever made the observation that

plaintiff "has an unreliable view of his skin condition."  (Id. at 16.)   Plaintiff argues that defendant

Noriega's diagnosis on December 8, 1999 that any boil or cyst that plaintiff was complaining

about at that time had healed, was incorrect.  (Id. at 17.)   Plaintiff contends that surgery was not

performed on February 24, 2000 when he went to the surgery clinic only because of his pending

release date and not because surgery was unnecessary. (Id. at 18.)   Plaintiff asserts that when he

saw dermatologist Dr. Berger on March 24, 2000, the doctor asked plaintiff why he did not have

the surgery.  (Opp'n at 18.)

/////

/////

---

[2] See Defs.' Facts, Noriega Decl., Ex. A at 24 (reflecting that the lesion had "healed").

I.  Medical History

       The medical records offered by the parties establish the following undisputed facts:

       1.  On July 21, 1997, plaintiff had a pilonidal cyst which was excised on that date. (Id. at 3; Opp'n at 5.)

       2.  On August 6, 1997, plaintiff was seen by Dr. Yazdgerdi regarding a boil on the right side of his abdomen which Dr. Yazdgerdi diagnosed as an abscess.  (MSJ at 3.)  Medication was prescribed, and plaintiff was ducated to return to the clinic in two weeks.  (Id.)

       3.  On August 12, 1997, Dr. Yazdgerdi saw plaintiff about a boil on his anus which was diagnosed as a pilonidal cyst.  (MSJ at 3.)  The boil was lanced, but continued to drain, causing plaintiff's skin to break out.  (Id.)  A topical medication was prescribed and plaintiff was ducated to return in three weeks.  (Id.)

       4.  On September 24, 1997, plaintiff returned to the infirmary stating that he needed a follow-up visit concerning the boil on his bottom.  (MSJ at 3.)  Plaintiff was diagnosed as having a pilonidal cyst, with sitz baths and a surgery consult being recommended by medical staff.  (Id.)

       5.  On September 29, 1997, plaintiff was ducated for minor surgery.  (Id.)  The surgeon did not perform surgery at that time, however, noting that there was no significant medical problem at that time.[3]  (Id.; Defs.' State. Undisputed Facts (Defs.' Facts), Noriega Decl., Ex. A at 38.)  The surgeon noted that a cyst in the same area had been removed in 1996 and that the problem had recurred.  (Id.)

       6.  On October 15, 1997, plaintiff was seen by medical staff for small blemishes on his face and leg.  (MSJ at 4.)  He was prescribed Erythromycin.  (Id.)

---

[3]  The progress note entry does not identify the doctor who made the notation; however, the handwriting appears to be that of defendant Noriega.  See Defs.' Facts, Noriega Decl., Ex. A at 38 and 34.

1    7.  On November 18, 1997, plaintiff was seen by medical staff for a facial skin

2  problem caused by hair follicles and dandruff.  (Id.)  He was prescribed Selsun shampoo and

3  Doxycline.  (Id.)  More shampoo was prescribed on December 11, 1997.  (Id.)

4    8.  On November 20, 1997, plaintiff returned to the clinic for a follow-up

5  appointment.  (Id.)  He was treated for boils on his face and was given a new medication after he

6  developed a rash from using the prior medication.  (Id.)

7    9.  On December 12, 1997, plaintiff was admitted to the hospital at California

8  Medical Facility (CMF) by defendant Dr. Noriega for removal of an anal fistula.  (Id.)[4]

9    10.  On December 15, 1997, defendant Dr. Noriega cancelled the surgery that was

10  to have been performed at CMF because the anal fistula had healed and closed.  (MSJ at 4; Defs.'

11  Facts, Noriega Decl., Ex. A at 34-35.)

12    11.  On December 22, 1997, plaintiff was seen for cracking, itchy skin.  (MSJ at

13  4.)  He was prescribed THC cream, Hydrocortisone cream and Selsun shampoo.  (Id.)

14    12.  On February 3, 1998, plaintiff returned to the clinic complaining of dry skin

15  and reported that the prescribed shampoo and cream had helped only minimally.  (Id.)  Defendant

16  Dr. Toppenberg noted, "unable to identify any lesions other than a single follicle in anal area

17  . . . ."  (Defs.' Facts, Noriega Decl., Ex. A at 33.)  Plaintiff was prescribed a topical antibiotic at

18  that time.  (MSJ at 4.)

19    13.  On February 10, 1998, defendant Dr. Toppenberg saw plaintiff for a boil on

20  his buttocks.  (MSJ at 4; Defs.' Facts, Noriega Decl., Ex. A at 32.)  Dr. Toppenberg noted that

21  there was no lesion a week earlier, but that this was a recurring problem.  (MSJ at 4-5.)  The

22  lesion showed early signs of infection so defendant Dr. Toppenberg prescribed Cipro antibiotic

23  and wrote a note for a consultation.  (Id. at 5.)

24  /////

25  _____

26    [4]  Plaintiff contends the date of admission was actually December 15, 1997.  (Opp'n at
10.)

8

14.   Plaintiff was seen in the medical clinic on April 27, 1998 for dandruff and jock itch.  (MSJ at 5.)  He was seen again on May 19, 1998 in response to an administrative appeal and complaints regarding a skin rash on his face and body.  (Id.)  He was seen at the medical clinic again on May 27, 1998 for lice.  (Id.)  Each time plaintiff was prescribed medication and a dermatology consultation appointment was also made.  (Id.)

15.   On June 11, 1998, plaintiff complained that he was suffering from a boil and that surgery should have been performed in January.  (MSJ at 5; Defs.' Facts, Noriega Decl., Ex. A at 28.)  The treating physician noted a "small slightly tender mass" and prescribed Velosef and Ancef.  (Id.)

16.   On June 15, 1998, plaintiff was seen again by defendant Dr. Toppenberg after plaintiff bumped into an oven causing a boil to burst.  (MSJ at 6.)  The area was cleaned and defendant Toppenberg wrote in the progress notes, "boil vs pilonidal cyst w/ . . . discharge. . ." (Defs. Facts, Noriega Decl., Ex. A at 27.)  No medication was prescribed for plaintiff at that time according to medical staff because medication had previously been prescribed to plaintiff for the condition.  (Id.)

17.   On July 7, 1998, plaintiff was seen by defendant Dr. Toppenberg for back pain, dry and flaky skin, open sore on the coccyx, and a boil/cyst on the right groin area.  (Defs.' Facts, Noriega Decl., Ex. A at 26.)  Dr. Toppenberg referred plaintiff for dermatology and surgery consults, and plaintiff was prescribed Motrin for pain, an antibiotic and body lotion. (MSJ at 6.)  Plaintiff does not dispute the action taken by defendant Toppenberg.  (Opp'n at 12.)

18.   On July 20, 1998, plaintiff was seen for boils on his forearms, lower extremities and hands.  (MSJ at 6.)  No lesions were observed.  (Id.)  Medical staff noted that plaintiff's consultation with the dermatologist was pending.  (Id.)

19.   On August 4 and August 5, 1998, plaintiff was seen in the clinic for a boil on his rear end.  (Id.)  The doctor noted an anal fistula and skin condition.  (Id.)  Plaintiff was prescribed dry skin cream, Erythromycin and was referred to the surgery clinic.  (Id.)

20.  On August 25, 1998, plaintiff was seen in the surgery clinic by defendant Dr. Noriega who did not observe any infection or draining.  (Id.)

21.  On September 22, 1998, plaintiff was seen in the surgery clinic by defendant Dr. Noriega.  (MSJ at 6.)  The lesion on plaintiff's bottom had healed, and medication was prescribed for the folliculitis on the left inner thigh.  (Id. at 6-7.)

22.  On September 24, 1998, plaintiff was prescribed Selsun shampoo and Hydrocortisone cream by the dermatologist.  (MSJ at 7.)  On November 3, 1998, the prescriptions were renewed.  (Id.)  On December 2, 1998, plaintiff received a prescription for body lotion and a referral to the dermatologist.  (Id.)

23.  On December 18, 1998, plaintiff was seen by defendant Dr. Noriega.  (Id.) Although plaintiff complained about body bugs, defendant Noriega found no evidence of such nor did he observe any overt lesions.  (Id.)

24.  On December 19, 1998, plaintiff was seen in the clinic for a draining pilonidal cyst.  (Id.)  He was given Betadine swabs.  (Id.)

25.  On December 27, 1998, plaintiff was examined and the cyst  looked good. (Id.)

26.  On January 19, 1999, defendant Noriega examined plaintiff's pilonidal abscess and referred his case to the Medical Authorization Review Board for approval of surgery. (MSJ at 7.)  Defendant Noriega prescribed Motrin and Ampicillin.  (Id.)

27.  Plaintiff was seen in the clinic on January 21, 27, and 28, 1999.  (Id.)  On January 28, it was noted that the pilonidal cyst had healed and was no longer draining.  (Id.) Plaintiff argues that the cyst was not healed on January 28, 1999.  (Opp'n at 14.)

28.  On February 3, 1999, plaintiff was seen by a dermatologist and complained of a painful cyst on his thigh.  (MSJ at 7.)

29.  On February 8, 1999, surgery was approved to treat plaintiff's pilonidal cyst. (MSJ at 7; Defs.' Facts, Noriega Decl., Ex. A at 18.)

1    30.  On February 9, 1999, defendant Dr. Noriega saw plaintiff in surgery,

2   diagnosed plaintiff's condition as Folliculitis and prescribed antibiotics.  (MSJ at 7.)

3    31.  On February 16, 1999, defendant Dr. Noriega examined the cyst on plaintiff's

4   thigh and found that it was improving.  (Id. at 8.)  Antibiotics were continued and additional

5   medication was prescribed.  (Id.)  Plaintiff was also seen by another doctor for his dry, flaky skin.

6   (Id.)  Plaintiff was diagnosed as suffering from Xerosis and was prescribed mineral oil and

7   Hydrocortisone.  (Id.)

8    32.  On March 12, 1999, plaintiff was seen by Dr. Berger, a dermatologist, who

9   diagnosed plaintiff's conditions as Xerosis, Acne Vulgaris, and Seborrhaic Dermatitis.  (Id.)

10   Plaintiff was prescribed a lotion, Doxycline, and TAR shampoo.  (Id.)

11    33.  On March 22, 1999, plaintiff complained about a lump on the left side of his

12   neck that he had for four days.  (Id.)  The treating physician prescribed medication.  (Id.)

13    34.  On April 13, 1999, plaintiff was seen for boils on his chest and jock itch.

14   (Id.)  Defendant Dr. Toppenberg prescribed Miconazole.  (Id.)  Defendant Dr. Noriega also

15   examined the mass on plaintiff's neck and prescribed Ampicillin and Tylenol for pain.  (Id.)

16   Plaintiff was told to return in two days.  (Id.)

17    35.  On April 15, 1999, the mass was surgically removed from plaintiff's neck.

18   (MSJ at 8.)  Plaintiff was prescribed medication.  (Id.)

19    36.  On April 23, 1999, plaintiff was seen by dermatologist, Dr. Berger.  (Id.)

20   Plaintiff was prescribed medication for his skin problem and referred plaintiff to the surgery

21   clinic.  (Id.)

22    37.  On May 4, 1999, plaintiff was seen for a boil on his chest that had been there

23   for a month.  (MSJ at 8.)  Plaintiff also complained about receiving his medications "piece

24   meal."  (Defs.' Facts, Noriega Decl., Ex. A. at 10.)  Plaintiff was advised to make a new

25   appointment and to bring in all his medications for review.  (Id.)

26   /////

11

1    38.  On June 4, 1999, defendant Dr. Toppenberg wrote plaintiff a prescription for

2  Miconazole.  (Id.)  The prescription was discontinued on June 11, 1999 by Dr. Berger who

3  prescribed Urea lotion, Keflex, a soap and TAC solution.  (Id. at 8-9.)  Dr. Berger saw plaintiff

4  again on June 25, 1999 and prescribed Keflex for the lesions and noted that plaintiff has an

5  unreliable view of his skin condition.  (Id. at 9; Defs.' Facts, Noriega Decl., Ex. A at 8.)

6    39.  On August 19, 1999, plaintiff saw defendant Dr. Noriega for treatment of

7  another boil.  (MSJ at 9.)  Defendant Noriega surgically removed the abscess from plaintiff's left

8  upper thigh and prescribed Tylenol for pain and other medication.  (Id.; Defs.' Facts, Noriega

9  Decl., Ex. A at 51.)  This surgery is recorded in the physician's orders.  See Defs.' Facts, Noriega

10  Decl., Ex. A at 51.

11    40.  On September 22, 1999, plaintiff went to the clinic concerning itching

12  around his groin area.  (MSJ at 9.)  The physician prescribed Miconazole cream.  (Id.)  On

13  October 21, 1999, plaintiff went to the clinic with bleeding in his right groin area.  (Id.)

14  Defendant Dr. Noriega stopped the bleeding and prescribed Tylenol for pain.  (Id.)

15    41.  On December 8, 1999, plaintiff complained of boils on his chest, armpit, and

16  of body odor.  (Id.)  Defendant Dr. Noriega found no skin problem or infection, but prescribed

17  Tylenol for pain.  (Id.)

18    42.  On January 21, 2000, a doctor removed a boil from plaintiff's chest and

19  prescribed an antibiotic.  (MSJ at 9.)  Plaintiff argues that he had informed defendant Noriega

20  about the boil on December 8, 1999.  (Opp'n at 17.)

21    43.  On February 3, 2000, defendant Dr. Toppenberg saw plaintiff and noted a

22  pilonidal cyst on the chest.  (MSJ at 9.)  Plaintiff was referred to surgery and prescribed Velosef

23  to treat the cyst.  (Id.)

24    44.  On February 24, 2000, Dr. Athanassious saw plaintiff for a surgery consult

25  and noted that plaintiff had been seen a year ago for a "pilonidal sinus" on his rear end.  (Id. at 9-

26  10.)  On March 2, 2000, Dr. Athanassious saw plaintiff again, but the pilonidal sinus was not

1  draining and surgery was deemed not necessary.  (Id. at 10.)  Dr. Athanassious noted that plaintiff

2  would parole in two months and requested a follow-up in two months.  (Id.)

3         45.  On March 9 and March 13, 2000, plaintiff was treated for further skin

4  problems.  (MSJ at 10.)

5         46.  On March 24, 2000, plaintiff was seen again by a dermatologist, Dr. Berger,

6  who examined plaintiff's upper leg and inner thigh and noted that plaintiff suffered from bad

7  acne and folliculitis, prescribing medication for those conditions.  (Id.)

8  II.  Legal Standards Applicable to Medical Care Claims

9         A claim of inadequate medical care arises from the Eighth Amendment.  "Not

10  every governmental action affecting the interests or well-being of a prisoner is subject to Eighth

11  Amendment scrutiny, however."  Whitley v. Albers, 475 U.S. 312, 319 (1986).  It is

12  "unnecessary and wanton infliction of pain" that constitutes cruel and unusual punishment

13  forbidden by the Eighth Amendment.  Id.; see also Ingraham v. Wright, 430 U.S. 651, 670

14  (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  "It is obduracy and wantonness, not

15  inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

16  Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

17         To prevail on an Eighth Amendment claim of inadequate medical care, plaintiff

18  must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

19  medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Such a claim has two elements:

20  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that

21  need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).

22         A medical need is serious "if the failure to treat the prisoner's condition could

23  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

24  McGuckin, 974 F.2d 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a

25  serious medical need include "the presence of a medical condition that significantly affects an

26  individual's daily activities."  Id. at 1059-60.  In demonstrating the existence of a serious medical

1   need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.

2   See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

3            If a prisoner establishes the existence of a serious medical need, then he must

4   show that prison officials responded to the serious medical need with deliberate indifference.

5   See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Proof that the defendants acted with

6   deliberate indifference is required to satisfy the subjective prong of the two-part test applicable to

7   Eighth Amendment claims.  See id.  Before it can be said that a prisoner's civil rights have been

8   abridged with regard to medical care, "the indifference to his medical needs must be substantial.

9   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

10  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

11  105-06).  Deliberate indifference is "a state of mind more blameworthy than negligence" and

12  "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer,

13  511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).  Mere differences of opinion between a

14  prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim.

15  See  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242

16  (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

17  III.  Analysis

18           Defendants Noriega and Toppenberg contend that they are entitled to summary

19  judgment in part because plaintiff received adequate medical care for his dermatological

20  conditions.  They note that of the many times plaintiff received medical attention, the two

21  defendants were the treating physicians less than 25% of the time, when they did participate in

22  plaintiff's treatment they examined him, noted his condition as it then-existed and provided the

23  appropriate treatment, if any.  They argue that the medical evidence in the record establishes that

24  they were clearly not indifferent to plaintiff's medical condition since they treated him, as

25  appropriate, on many occasions.

26  /////

The chronology of the medical care received by plaintiff while incarcerated, as established by the evidence submitted to the court, demonstrates that plaintiff has chronic skin problems which have caused outbreaks of rashes, boils, cysts, and abscesses on his neck, chest, abdomen, arms, legs, groin, and buttock.  The medical records also indicate that plaintiff has been treated at the medical clinic numerous times, prescribed a wide range of medications, examined by dermatologists and undergone surgery to remove cysts and boils.  The undersigned finds that defendants have carried their initial burden of pointing to evidence that demonstrates there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim.  Because defendants have borne their initial responsibility, the burden shifts to plaintiff to establish the existence of a genuine dispute of material fact that precludes summary judgment.

A party opposing a motion for summary judgment is required to reproduce the facts contained in the moving party's statement of undisputed facts and to admit each fact that is undisputed and deny each fact that is disputed, including with each denial a citation to evidentiary documents relied upon in support of the denial.  Local Rule 56-260(b).  A party opposing summary judgment may file a concise statement of disputed facts, citing the source thereof in the record, that contains additional material facts as to which there is a genuine issue precluding summary judgment.  Id.  Plaintiff did not reproduce the facts contained in defendants' statement of undisputed facts and admit or deny each fact.  Nor did plaintiff submit a concise statement of disputed facts, as permitted by the rule.[5]

"A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  See also Summers v. A.

_____

[5] Plaintiff's separate statement of undisputed facts filed June 20, 2005, is inadequate.  It sets forth only the single allegedly undisputed fact that on March 11, 1997 Dr. Berger strongly recommended treatment of plaintiff's pilonidal sinus.  The statement thereafter merely contends that "defendant's (sic) fact's (sic) also show plaintiff's in appropriate (sic) medical treatment."

1    <u>Teichert & Son, Inc.</u>, 127 F.3d 1150, 1152 (9th Cir. 1997).  On summary judgment the court is

2    not to weigh the evidence or determine the truth of the matters asserted but must only determine

3    whether there is a genuine issue of material fact that must be resolved by trial.  <u>See</u> <u>Summers</u>,

4    127 F.3d at 1152.  Nonetheless, in order for any factual dispute to be genuine, there must be

5    enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's

6    summary judgment motion.  <u>See</u> <u>Addisu</u>, 198 F.3d at 1134.

7              In his opposition to the pending motion for summary judgment, plaintiff argues

8    that the medical care provided to him by defendants fell below the standard set forth in the

9    California Code of Regulations, Title 15, section 3350.[6]  (Opp'n at 18-19.)  In addition, plaintiff

10   contends that his treatment by defendants "was totally unreasonable" and that the defendants

11   failed to consider data which a "reasonable doctor" would find significant in determining the

12   appropriate medical treatment.  (Opp'n at 4, 7.)  Plaintiff's arguments, focusing on the medical

13   care standard set out in the California Code of Regulations, are misplaced.  In order to defeat

14   defendants' summary judgment motion, plaintiff must point to evidence from which a trier of

15   fact could find that defendants were deliberately indifferent to his medical care.  <u>See</u> <u>Farmer</u>, 511

16

17              [6] California Code of Regulations, Title 15, § 3350 provides:

18              (a) The department [of Corrections] shall only provide medical
                services for inmates which are based on medical necessity and
19              supported by outcome date as effective medical care.  In the
                absence of available outcome data for a specific case, treatment
20              will be based on the judgment of the physician that the treatment is
                considered effective for the purpose intended and is supported by
21              diagnostic information and consultations with appropriate
                specialists. . . .

22              (b) For the purposes of this article, the following definitions apply:

23              (1) Medically necessary means health care services that are
                determined by the attending physician to be reasonable and
24              necessary to protect life, prevent significant illness or disability, or
                alleviate severe pain, and are supported by health outcome date as
25              being effective medical care.

26   Cal. Code Regs. tit. 15, § 3350 (West 2006).

1  U.S. at 834.  As noted above, deliberate indifference requires more than ordinary lack of due

2  care.  See id. at 835.

3          Plaintiff contends that he has a pilonidal sinus and that surgery should have been

4  performed on September 29, 1997 and December 15, 1997.  However, on those days, defendant

5  Noriega noted in plaintiff's medical record that the fistula had healed, did not require surgery and

6  that no significant medical problem was posed by the condition as it then existed.  (Defs.' Facts,

7  Noriega Decl., Ex. A at 34-35, 38.)  The medical records also indicate that on January 19, 1999,

8  defendant Dr. Noriega made a referral to the review board to obtain approval for surgery, and

9  although approval was obtained, surgery was not performed because plaintiff's condition had

10  improved by the time of the scheduled surgery which was then deemed inappropriate.  (MSJ at

11  7.)  The record reflects that plaintiff did have surgery performed on April 15, 1999 to remove a

12  mass from his neck and again on August 19, 1999 when defendant Dr. Noriega removed an

13  abscess from plaintiff's thigh.  (MSJ at 8-9.)  However, plaintiff disagrees with defendant

14  Noriega's diagnosis and treatment decisions and with defendant Toppenberg's diagnosis on

15  February 3, 1998, February 10, 1998, and June 15, 1998.  (Opp'n at 11-12.)

16          Thus, plaintiff essentially disagrees with the manner in which both defendants

17  diagnosed and treated his dermatological condition.  Of course, as noted above, mere differences

18  of opinion between a prisoner and prison medical staff as to proper medical care do not give rise

19  to a § 1983 claim.  See  Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at

20  1334.  The defendants' evidence demonstrates that plaintiff's dermatological conditions were

21  examined and treated regularly.

22          Upon consideration of plaintiff's opposition to defendants' motion, the

23  undersigned finds that plaintiff has not offered or pointed to evidence that demonstrates the

24  existence of disputed issues of material fact with regard to the treatment provided for his

25  conditions.  Defendants have offered evidence that their examination and treatment of plaintiff

26  met the standard of care, while plaintiff has merely misinterpreted medical records, drawn

17

1   unreasonable inferences from medical records, and speculated as to defendants' motives.

2   Plaintiff's arguments demonstrate only a difference of opinion between a prisoner and prison

3   medical staff as to his proper medical care.

4   　　　　No evidence offered by plaintiff supports a conclusion that defendants acted with

5   the substantial indifference required to support an Eighth Amendment claim of constitutionally

6   inadequate medical care.  Such indifference is an element essential to plaintiff's constitutional

7   claims, and plaintiff's complete failure of proof concerning this element requires that summary

8   judgment be entered in favor of both defendants.

9   　　　　　　　MOTION TO OBTAIN THE ATTENDANCE OF WITNESSES

10   　　　　On April 11, 2005, plaintiff filed his pretrial statement and motion to obtain the

11   attendance of witnesses for trial.  On March 3, 2005, the court vacated the deadlines for the filing

12   of pretrial statements and plaintiff's motion to obtain the attendance of witnesses, and dates for

13   pretrial conference and trial.  Therefore, plaintiff's motion will be denied.

14   　　　　Accordingly, IT IS HEREBY ORDERED that plaintiff's April 11, 2005 motion to

15   obtain the attendance of witnesses is denied as unnecessary.

16   　　　　Also, IT IS HEREBY RECOMMENDED that:

17   　　　　1.  Defendants' April 25, 2005 motion for summary judgment be granted; and

18   　　　　2.  This action be dismissed.

19   　　　　These findings and recommendations are submitted to the United States District

20   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

21   days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within five days after service of the objections.  The parties are advised

25   /////

26   /////

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: March 2, 2006.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:4
    frank925.sj

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

19